STATE, MORRIS CANAL AND BANKING COMPANY, PROSECU-
TORS, v. JAMES H. LOVE, COLLECTOR OF JERSEY CITY.

1. The exemption from taxation in the prosecutors' charter only applies
   to such estate or property of the company as is possessed, occupied,
   and used for the actual and necessary purposes of the canal navigation.
2. Lots of land leased to others for their exclusive use and occupancy, in
   discharging and shipping coal carried over the canal, are not exempt.
3. Construction applied to lots differently situated.

Several writs of *certiorari* bring up the taxes assessed
against the prosecutors for the years 1866, '67, '68, '69, '70, '71,
'72, on certain lots of land in Jersey City, viz. : on Block 2,
twenty-six lots on Hudson street ; half pier at foot of Essex
street ; Block 33, lots nine, ten, eleven, and twelve, Hudson
street ; Block 33, lots two, four, six, eight, ten, and twelve,
Bergen street ; Block 164, lots A, B, C, D, Van Vorst street ;
Block 64, South street, house and stable ; Block 130, lots
eighty-seven, eighty-nine, ninety-one, ninety-three, ninety-
five, ninety-seven, ninety-nine, one hundred and one, and
one hundred and three.

Argued at November Term, 1873, before Justices BEDLE,
DALRIMPLE and SCUDDER.

For the plaintiffs, *I. W. Scudder*.

For the defendant, *Lewis*.

The opinion of the court was delivered by
SCUDDER, J.    The only question presented in these cases
is, whether these several lots of land are exempted from taxa-
tion under the charter of the prosecutors.

Section four of the " act to incorporate a company to form
an artificial navigation between the Passaic and Delaware
rivers," by which the prosecutors became a corporation, with
the name of " Morris Canal and Banking Company," enacts,
" that no state, county, township, or other public assessments,

taxes, or charges whatsoever, shall at any time be laid or imposed upon the said canal company, or upon the stocks and estates which may become vested in them under this act; but this exemption shall not extend to any other estate or property of the company than *such as is possessed, occupied, and used for the actual and necessary purposes of said canal navigation under this act,* according to the true intent and meaning thereof," &c.   (*Laws* 1824, *p.* 160.)

A supplement passed in 1828, authorized this company to continue the canal to the waters of the Hudson, at or near Jersey City.   There was, however, no change of the exempting section in this supplement.

By an act of March 14th, 1867, the state of New Jersey granted certain lands under water in the Hudson river to the prosecutors, but expressly made these additional lands subject to taxation.

The construction and application of these several acts have been considered in this court, in *State* v. *Betts*, 4 *Zab.* 555, and *State, Morris Canal and Banking Company, pros.,* v. *Haight, Collector,* 6 *Vroom* 178 ; and the latter case also in the Court of Errors and Appeals.

The lots in controversy now, are not included within the lands granted by the state under the act of 1867, and the only point to be determined is, whether they are exempted from taxation by the terms of the original charter above cited.

This turns upon the question of fact, whether they are possessed, occupied, and used by the company for the actual and necessary purposes of said canal navigation under the act, which includes the legal construction of the term " actual and necessary purposes of canal navigation."

We can hardly be at a loss for this interpretation, as it has been given recently, in its application to a railroad charter, in *State* v. *Hancock*, 6 *Vroom* 537.   It is there held that the word "necessary," in that connection, does not mean indispensable, but that the term comprises a grant of the right to use all the means suitable and proper to accomplish the end which the legislature had in view at the time of the enactment of the charter.   The narrower construction which had been

given in *State* v. *Mansfield*, 3 *Zab.* 510, was not approved in this later case ; and it was held that the word "necessary" is not to be contradistinguished from the word convenient, but that it included whatever is obviously appropriate and convenient to carry into effect the franchise granted.

This recent adjudication in our Court of Errors and Appeals, will furnish our rule for interpreting what are the necessary purposes of canal navigation under this charter.

This court, in State v. Betts, have made an application of this rule to some facts in that case which covers almost all that is disputed in this. Not only was it conceded that the canal, with its water-way and banks, were exempted from taxation, but piers used for storing and shipping coal, and other articles of freight, to be carried over the canal, and the basin, all in the actual possession, occupancy and use of the company, and used indiscriminately by all persons bringing freight through the canal, were also held to be exempted. But it cannot be maintained that, if basins, piers, wharves and bulkheads, were rented to others, to be used by them exclusively, although for the purposes of transporting freight upon the canal, however profitable this might be to the company in furthering its purposes, by securing good customers, that such basins, piers, wharves and bulkheads would be *possessed, occupied and used* by the company. The exclusive possession, occupancy and user, although for the purposes of canal navigation, would be in others. This presents the question which was suggested in the case of State v. Betts, where it is said, "if they have erected or should erect stores or storehouses, for the purpose of renting them out, and increasing their profits by deriving an income from these sources, it would present, for consideration, a question not now before us."

I see no reason to hesitate in saying that such stores and storehouses would not be exempt, even though they were intended for uses connected with the canal navigation, so long as they remain in the possession, occupancy and user of others than the company or its agents. The exemption applies only

to such property of the company as is intended for the necessary purposes of its charter, which must also be and remain in their possession, occupancy and use.

Let us now apply this settled construction of the exempting clause of the charter to the facts of this case.

The twenty-six lots on Hudson street, included in Block 2, on the map shown to the court, are assessed in some of the duplicates returned, as comprised in Block 1, and in others as in Block 1 and 2. The testimony is also confused as to the location of these lots. Block 1 is said to be all water and is the small basin over which all the boats, passing to and from the canal to and from the Hudson river, pass. If this be so, then it is a part of the canal in the actual possession, occupancy and use of the company for the necessary purposes of canal navigation, and these lots are exempt from taxation. In another part of the evidence it is testified that the twenty-six vacant lots in Block 2, on Hudson street, are used for the discharge of coal from the boats, and a portion of that block is in the occupation of the Scranton Coal Company, and another portion in the occupation of Schenck & Hough ; that these parties hold these portions of the company's lands under lease, for a small or nominal rent, but upon condition to transport a certain quantity of coal over the canal each year, and thereby bring business and profit to the company. If this be so, then such lots are not exempted by the charter. Whatever the facts may be as to the particular location of these lots, the determination is, that if they are covered with water and included in the small basin which forms part of the outlet of the canal, they should not be assessed ; but if they are above water, and leased to third parties, they are liable to taxation.

The half pier at the foot of Essex street, has been leased for seven years or more to E. A. Quintard & Co. They have control of this half pier, and no coal is discharged there, excepting for them or by their order. This is, therefore, out of the possession, occupation and use of the company, and is taxable under the charter.

Lots numbers nine, ten, eleven and twelve, on Hudson street, and two, four, six, eight, ten and twelve, on the canal basin, all within Block 33, have been leased to and are occupied by other persons for several years. W. J. B. Smith had them—after him a Mr. Van Winkle; and subsequently, until 1873, all were occupied under lease by Schenck & Hough for a nominal rent, but for purposes advantageous and profitable to the canal in carrying coal, &c., for them. Up to 1873, therefore, all these lots were taxable, for they had not been in the occupancy of the company for several years. In 1873 the company took lots six, eight, ten and twelve, and occupy them for receiving freights to go west; they are in the position of a bulkhead, opposite a pier on the canal basin, and are now used as an appendage to the business of the company, for their actual and necessary purposes, within the construction heretofore given to these terms. These lots would, therefore, be now exempt.

The house and stables on Block 64, South street, are also exempt. They are used for canal purposes. The stables are occupied for stabling the horses and mules belonging to the company, that draw the boats; and the house is used by the man who has charge of the stables, and for no other purpose. These horses and mules are the motive power used on the canal. It is necessary for the company to have some place near their canal outlet for their care. The house also, which adjoins the stables, is essential to such care. It does not appear that any rent is paid for the dwelling, or that it is other than a mere incident to the stables.

Block 130 comprises lots eighty-seven, eighty-nine, ninety-one, ninety-three, ninety-five, ninety-seven, ninety-nine, one hundred and one hundred and three on Bergen street, and eighty-nine, ninety-one, ninety-three, ninety-five, ninety-seven, ninety-nine, one hundred and one, one hundred and three on Essex street. The testimony as to these is, that they are all under water, except a narrow strip on what may be called the berme bank, and they form a kind of basin, over which the boats pass. They are about five hundred feet from the outlet

lock at Washington street. These lots, according to the evidence, are used the same as the canal, for floating boats over, and have been so used as part of the canal proper ever since it was first opened. While such use continues, they are not liable to taxation. This applies only to such as are covered with water. There are some parts of these lots which are uncovered and form no part of the canal works; they are liable to taxation.

The only remaining lots brought up for consideration are A, B, C and D, in Block 164, on Van Vorst street. These are leased by the company to other parties for the purpose of discharging coal. The company have no interest in the coal beyond the freight for carrying it, and the lessees have the exclusive occupancy. These lots are, therefore, chargeable with tax under this charter.

The taxes assessed upon the prosecutors' lots, shown in the returns for these several years, from 1866 to 1872, inclusive, must be reduced as above indicated; as to the excess, the several assessments are reversed; and for the balance, the said assessments are affirmed.

If there should be any difficulty between the parties in stating and amending the assessments, either may apply for a further order to have the same adjusted according to the practice of the court.